CHRISTOFFER A. OLSEN and Another, Appellants, *v.* MARINE TRANSIT CORPORATION, Respondent.

First Department, June 10, 1932.

*Winifred Sullivan*, for the appellants.

*Courtland Palmer*, for the respondent.

MARTIN, J. The plaintiffs brought this action for an accounting of defendant's agency in operating and managing a tugboat during the season of 1930. They also demanded the delivery of the boat.

On March 19, 1930, the defendant, through its treasurer, Gerald A. Fagan, entered into a contract with the plaintiffs for the sale to them of the tugboat *Dorothy*. The contract of sale (Exhibit " A,"

attached to the complaint) provided that the purchase price was to be $5,000, payable $100 on the signing of the contract, $2,900 on or before April 1, 1930, and the balance of $2,000 out of the earnings of the tug from work given it by the defendant. The 6th paragraph then provided as follows:

" 6. The Marine Transit Corporation agree to manage but without liability, the said tug *Dorothy*, the same as if the said tug was their vessel *and agrees to get as much work as possible for the said tug* for a consideration of 5% commission on the gross amount of the tow bill."

On the same day the parties entered into a second contract under the terms of which the defendant was to deduct from the amounts received for the use of the tug all operating expenses and in addition thereto the sum of $333 per month to apply on the purchase price of the tug, and the balance was to be turned over to the plaintiffs as the net proceeds of the earnings of the boat.

While the sale and operation of the boat were being considered, a Mr. Bouchard, representing the Bouchard Transportation Company, called at the defendant's office for the purpose of discussing with defendant's treasurer, Mr. Fagan, the proposition of towing oil barges, which had previously been towed by the tug *Dorothy*. Mr. Bouchard was told that the plaintiffs now owned the tug and a discussion followed with respect to the towing of the oil barges, the fixing of a definite price for such towing, and in order to avoid any future dispute with reference to the matter, a letter was written and signed by Mr. Fagan, defendant's treasurer, setting forth the particulars with respect to towing oil barges for Mr. Bouchard's company. This letter was written and signed after the signing of the contract of sale, management and operation.

Thereafter plaintiffs paid $3,000 on account of the purchase price of the tugboat. The boat was then delivered to plaintiffs, and after repairs had been made it was brought to New York. One of the plaintiffs acted as engineer and the other as the fireman on the *Dorothy*. The plaintiffs were unable to secure any of the oil barge towing and they questioned the management and operation of the boat by the defendant, inspected the defendant's alleged contract with Bouchard to tow oil barges and say they then discovered it was unsigned. Thereafter the plaintiffs say that the defendant asked them to tie up the tug, which plaintiffs refused to do; that defendant requested plaintiffs to do a $1,200 job for $500, which was also refused; that the defendant thereupon ordered plaintiffs off the boat, and until the end of the season, December, 1930, the defendant operated the boat. It is alleged that no accounting or earnings from the tug have been received by plaintiffs;

that a demand was made that the defendant deliver the tug to them, which was refused; that the plaintiffs have no means of ascertaining the earnings and expenses of the *Dorothy* except through an accounting by the defendant.

It is the contention of the plaintiffs that they were induced to enter into the contract for the purchase of the boat and its operation by the defendant through the representations that plaintiffs were to be given oil-towing contracts which would have resulted in the gross income of $19,500. On the ground that they would not have purchased the *Dorothy* if it had not been for such inducement, the plaintiffs seek to charge the defendant, in an accounting, with the proceeds they should have received from the oil-towing contract. The plaintiffs also seek to recover the balance due after deducting from the earnings of the boat the expenses of operation and the sum of $333 per month as payments on account of the purchase price.

There is no provision in the original contract by which the respondent agreed to guarantee any certain amount of business for the tug. The two letters written on the same day, but after the contract for the sale of the tug had been entered into, are relied upon to sustain the contention of the plaintiffs. The first provides that certain expenses shall be deducted from the money earned by the boat and that the defendant was to deduct $333 per month to apply against the balance of the purchase price. The second relates to the towing of oil barges and sets forth proposed charges for same, including waiting time. There is a dispute between the parties with respect to the writing of two letters, the plaintiffs saying that they were signed at one time and all are part of one contract, while the defendant says that the two letters were written after the original contract had been signed.

In any event the letter on which the plaintiffs rely does not guarantee them the oil barge towing business but is merely a statement fixing the terms upon which the barges were to be towed if the business should be received by the plaintiffs.

We have reached the conclusion that the boat was not purchased because of any such representations and that the trial judge was correct in so holding. The fact that the oil shipper forwarded the oil by rail, due to a subsequent reduction in rail rates, and thus prevented the carrying out of the plan to have plaintiffs' boat tow oil barges, should not be charged to the defendant. The sole agreement of the defendant was to operate the tug and to obtain " as much work as possible for the said tug."

The court properly held that the plaintiffs were entitled to an accounting. In view of the fact that the defendants did operate

the tugboat during the season of 1930, all earnings should be accounted for, but not upon the basis contended for by the plaintiffs. Only the actual earnings of the boat and not the prospective earnings based upon the oil-towing business which plaintiffs allege they should have received should be taken into consideration.

To accomplish that result the court properly appointed a referee to take and state an account between the parties as to the amount due the plaintiffs under the contract, to determine the cost of repairs and operating expenses and the amount due the defendant as part of the agreed purchase price of the boat.

The interlocutory judgment should be affirmed, with costs.

FINCH, P. J., MERRELL and TOWNLEY, JJ., concur; O'MALLEY, J., dissents and votes for reversal.

O'MALLEY, J. (dissenting). I am of opinion that the weight of the credible evidence requires a finding that plaintiffs' Exhibits 1, 2 and 3 all relate to one contract and should be construed together. It was error, therefore, to limit the scope of the accounting between the parties to plaintiffs' Exhibit 1.

The interlocutory judgment should be reversed and judgment granted for the plaintiffs decreeing an accounting with respect to all three exhibits.

Judgment affirmed, with costs.